UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Case No. 1:25-CV-296

| | |
|---|---|
| **ELEAZAR MONTGOMERY**<br><br>Plaintiff<br><br>v.<br><br>**GOODLEAP, LLC., EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, and TRANSUNION, LLC**<br><br>**Defendant** | **COMPLAINT**<br><br>**WITH DEMAND FOR TRIAL BY JURY** |

**NOW COMES** Plaintiff, Eleazar Montgomery, by and through Counsel, and pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681 *et seq.*, and N. C. Gen. Stat. § 75-50, *et seq.*, respectfully pleads to this Court the following:

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to 15 U.S.C. § 1681p, 28 U.S.C. § 1331 and 28 U.S.C. 1367.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2).

3. This case is brought within two years of the alleged FCRA violations in compliance with the statute of limitations at 15 U.S.C. §1681p.

4. This case is brought within four years of the alleged violations of North Carolina Law in compliance with the statute of limitations at N.C. Gen. Stat. § 75-16.2.

## PARTIES

5. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

6. Eleazar Montgomery ("Plaintiff") is an individual and citizen of the State of North Carolina who currently resides in Haywood County, North Carolina.

7. At all times relevant to this action the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

8. At all times relevant to this action the Plaintiff was a "consumer" as defined by N.C. Gen. Stat. § 75-50(1).

9. The alleged debt at issue arose out of a transaction that was primarily for personal, family or household purposes.

10. At all times relevant to this action the alleged debt in this matter was a "debt" alleged to be owed as defined by N.C. Gen. Stat. §75-50(2).

11. Goodleap, LLC (GL), formerly known as Loanpal, LLC, is a California technology and financing company doing business in North Carolina.

12. At all times relevant to this action GL was a "person" as that term defined in 15 U.S.C. § 1681a(b).

13. GL can be reached for service at its Registered Agent, CT Corporation System, at 160 Mine Lake Ct Ste 200, Raleigh, NC 27615-6417.

14. At all times relevant to this action the GL was a "Debt Collector" as defined by N.C. Gen. Stat. § 75-50(3).

15. Equifax Information Services, LLC (Equifax), is a Georgia limited liability company doing business throughout the country and in the state of North Carolina.

16. Equifax is a "consumer reporting agency" (CRA) as defined in 15 U.S.C. § 1681a(f).

17. Equifax can be reached for service through its registered agent, Corporation Service Company, at 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina 27608.

18. At all times relevant to this action Equifax was engaged in commerce in North Carolina by engaging in, *inter alia*, reporting of consumer credit information.

19. At all times relevant to this action Equifax was a "person" as that term defined in 15 U.S.C. § 1681a(b).

20. TransUnion, LLC ("TransUnion"), is a Delaware limited liability company doing business throughout the country and in the state of North Carolina.

21. TransUnion is a "consumer reporting agency" (CRA) as defined in 15 U.S.C. § 1681a(f).

22. TransUnion can be reached for service through its registered agent, The Prentice-Hall Corporation System, Inc., 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina, 27608.

23. At all times relevant to this action TransUnion was engaged in commerce in North Carolina by engaging in, *inter alia*, reporting of consumer credit information.

24. At all times relevant to this action TransUnion was a "person" as that term defined in 15 U.S.C. § 1681a(b).

25. Experian Information Solutions, Inc. (Experian), is an Ohio based company doing business in the state of North Carolina.

26. Experian is a "consumer reporting agency" (CRA) as defined in 15 U.S.C. § 1681a(f).

27. Experian can be reached for service through its registered agent, CT Corporation System at 160 Mine Lake Ct Ste 200, Raleigh, NC 27615-6417.

28. At all times relevant to this action Experian was engaged in commerce in North Carolina by engaging in, *inter alia*, reporting of consumer credit information.

29. At all times relevant to this action Experian was a "person" as that term defined in 15 U.S.C. § 1681a(b).

**FACTUAL ALLEGATIONS**

30. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

31. Eleazar is 26 years old, and grew up in the rural part of Weaverville, North Carolina.

32. Until very recently, and all times relevant to this complaint, he could not read or write, as his mother withdrew him from public school after the 2nd grade.

33. His mother was supposed to homeschool Eleazar; however, she did not continue his education.

34. At 18, Eleazar found a job as a stock clerk making $10.00 per hour at a local grocery store where his older brother also worked as a stocker.

35. His brother was removed by their mother from school in middle school.

36. Neither of the brothers were allowed to get a driver's license and their mother, who did not work, drove them everywhere they needed to go. They were basically prisoners to her.

37. Their mother had both of their paychecks direct deposited into joint bank accounts with her, but she kept them from accessing those accounts. She handled all of their business affairs.

38. Eleazar's mother had been a nurse; however, she was convicted of false imprisonment and resisting arrest just before Eleazar was born. This arrest involved an older brother.

39. Eleazar 's father committed suicide the month before he was born.

40. Eleazar was tested at Western Carolina University in the Spring of 2024 to determine the extent of his illiteracy as he thought he might be dyslexic.

41. Eleazar is currently receiving tutoring at Literacy Today in Asheville and is working toward getting his GED.

42. Eleazar had one joint credit card with his mother, which he recently closed with the help of a friend who offered him a place to live for a few months.

43. He then moved in with his girlfriend's family, who taught him to drive.

44. After learning to drive, Eleazar tried to apply for a small loan to buy a used car.

45. To his great surprise, he was turned down due to having too much debt.

46. Eleazar immediately pulled his credit report only to see that his mother had opened several credit card accounts either in his name or jointly with her.

47. Eleazar could not have opened those accounts because he could neither read nor write at the time they were opened.

48. With help, Eleazar was able to close most of those cards; however, one (Barclays) still shows a balance that his mother stopped paying after he moved out.

49. Eleazar also learned that on June 13, 2020, his mother took out a loan for $75,064.00 with Loanpal, LLC.

50. Loanpal, LLC is now GoodLeap, LLC (GL).

51. The loan was in Eleazar's name as principal borrower and his mother as co-borrower.

52. Eleazar had never agreed to this loan, nor did he know anything about it when it until he attempted to finance a car.

53. The loan was acquired with Power Home Solar, for solar panels for his mother's house.

54. The original loan was "docusigned" [1] without his permission.

55. Eleazar never signed any loan nor could he have read the loan terms. At that time Eleazar could neither read not write.

56. Eleazar did not know of or assent to any terms of this loan, or any loan or credit that his mother acquired in his name.

---

[1] Docusign is an agency that provides a process for electronically signing a document online.

57. In the meantime, the company that sold the solar panels to Eleazar's mother, Power Home Solar, LLC. d/b/a Pink Energy, filed for Chapter 7 bankruptcy on November 16, 2022. *See*, *in re Power Home Solar, LLC*, Case No. 22-50228 (W.B.N.C.).

58. With help, Eleazar provided GL with all the information stated in this complaint along with a police report and several letters from credit card companies releasing him from their credit card debt.

59. GL has been investigating the case since April 2024 and are now calling for Eleazar to pay the debt as his mother stopped paying this loan as well when Eleazar moved out.

60. GL has no right to call Eleazar, as it knows he did not agree to the alleged debt.

61. GL has called Eleazar hundreds of times, an extremely unreasonable number of times to collect the alleged debt.

62. Eleazar has endured much at the hands of his mother, unfortunately, and the Defendants have continued and added to his injuries by failing to follow the law.

63. Eleazar has suffered financial loss, emotional distress, and great embarrassment over the actions of the Defendants and their failure to remedy this situation.

64. Eleazar still cannot secure financing for transportation, nor can he find credit approval to rent his own living space.

65. This also causes great financial stress and emotional distress.

66. The constant barrage of calls and the weight of these financial issues have led to an overwhelming sense of anxiety.

67. The stress has manifested physically, resulting in visible signs of stress, including redness and irritation that Eleazar cannot hide after episodes of crying,

68. The lack of sleep and increased stress have caused noticeable dark circles under Eleazar's eyes.

69. Eleazar has become increasingly emotional, struggling to control his feelings, and experiencing frequent episodes of uncontrollable crying.

70. The severity of Eleazar's symptoms has necessitated seeking therapy through BetterHelp, where he has been diagnosed with high anxiety.

71. The stress and anxiety caused by these issues have significantly impacted Eleazar's daily life, relationships and overall well-being.

72. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

73. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

**Goodleap, LLC**

74. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

75. GL was properly noticed by the Plaintiff that the reported alleged debt as described herein should not have been reported on the Plaintiff's credit report as it was reporting to the CRAs.

76. The CRAs noticed GL of the inaccuracies on the Plaintiff's credit reports.

77. GL had in its records all of the information relevant to the account in question and chose to report the Plaintiff as delinquent when GL knew that the Plaintiff was not delinquent, and in fact did not owe the debt at all.

78. GL chose to report the Plaintiff as having an account that was delinquent when it knew the Plaintiff did not have an account that was delinquent.

79. GL knows that the information it is reporting about the Plaintiff is inaccurate because of its own records and the records supplied to it by the Plaintiff and the CRAs.

80. Plaintiff contacted Equifax, TransUnion and Experian repeatedly to dispute the accuracy of the information being reported about them.

81. Upon information and belief, pursuant to 15 U.S.C. § 1681i(a)(2), GL received notification of this dispute from Equifax, TransUnion and Experian.

82. GL has repeatedly failed to conduct a reasonable investigation into the accuracy of information related to the disputed trade line, in violation of 15 U.S.C. § 1681s-2(b)(1).

83. Notwithstanding GL's actual knowledge that Plaintiff's trade line should not be reported as delinquent or charged off, GL's failure to conduct a reasonable investigation of the accuracy of its reporting of this adverse information shows an intentional and reckless disregard for Plaintiff's rights under the FCRA.

84. In addition to the violation as described above, GL failed to satisfy its duty under 15 U.S.C. § 1681s-2(b) of updating incomplete or inaccurate information it had previously reported to CRAs upon receipt of each notice from Equifax, TransUnion and Experian that Plaintiff disputed the accuracy of the previously reported information.

85. Any collection or delinquency reported on the Plaintiff's account was due to GL's conduct and purposely or recklessly inaccurate record keeping and not due to financial irresponsibility on behalf of the Plaintiff.

86. The information that GL had furnished to the CRAs to be published was false, and GL knew it was false.

87. This information showed the Plaintiff to be an irresponsible consumer when that is not true.

88. As a direct and proximate result of GL's willful and/or negligent refusal to comply with the FCRA as outlined above, Plaintiff has suffered substantial loss and damage as described herein, entitling the Plaintiff to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

**Equifax**

89. Equifax willfully and recklessly or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of 15 U.S.C. §1681e(b).

90. Equifax knew, or has sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it is circulated was extremely inaccurate and damaging to Plaintiff.

91. Despite actual and implied knowledge that it was publishing inaccurate accounts on the Plaintiff's credit reports, Equifax readily sold false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

92. Equifax published the same incorrect information multiple times.

93. Plaintiff was unable to obtain certain credit extensions, as described herein, because of the grossly inaccurate credit file maintained by Equifax.

94. Plaintiff has suffered out-of-pocket loss as a result of Equifax's willful or reckless and negligent violations of the FCRA.

95. Plaintiff has not been free to take advantage of various credit opportunities available to other consumers because of Equifax's failure to report only accurate information about the Plaintiff.

96. As a direct and proximate result of Equifax's actions as alleged herein, the Plaintiff has suffered loss and damage as listed above as well as damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling the Plaintiff to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

97. Upon information and belief, Equifax has been sued on multiple occasions over recent years for actions similar to the actions listed in this complaint.

98. Upon information and belief, Equifax has exhibited a pattern of refusing to conform its practices the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

99. Equifax's pattern of refusal to conduct its business in accordance with the FCRA reveals a conscious disregard of the rights of Plaintiff.

100. Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of consumers.

101. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

**TransUnion**

102. TransUnion willfully and recklessly or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of 15 U.S.C. §1681e(b).

103. TransUnion knew, or has sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it is circulated was extremely inaccurate and damaging to Plaintiff.

104. Despite actual and implied knowledge that it was publishing inaccurate accounts on the Plaintiff's credit reports, TransUnion readily sold false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

105. TransUnion published the same incorrect information multiple times.

106. Plaintiff was unable to obtain certain credit extensions, as described herein, because of the grossly inaccurate credit file maintained by TransUnion.

107. Plaintiff has suffered out-of-pocket loss as a result of TransUnion's willful or reckless and negligent violations of the FCRA.

108. Plaintiff has not been free to take advantage of various credit opportunities available to other consumers because of TransUnion's failure to report only accurate information about the Plaintiff.

109. As a direct and proximate result of TransUnion's actions as alleged herein, the Plaintiff has suffered loss and damage as listed above as well as damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling the Plaintiff to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

110. Upon information and belief, TransUnion has been sued on multiple occasions over recent years for actions similar to the actions listed in this complaint.

111. Upon information and belief, TransUnion has exhibited a pattern of refusing to conform its practices the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

112. TransUnion's pattern of refusal to conduct its business in accordance with the FCRA reveals a conscious disregard of the rights of Plaintiff.

113. TransUnion's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of consumers.

114. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages against TransUnion, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

**Experian**

115. Experian willfully and recklessly or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of 15 U.S.C. §1681e(b).

116. Experian knew, or has sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it is circulated was extremely inaccurate and damaging to Plaintiff.

117. Despite actual and implied knowledge that it was publishing inaccurate accounts on the Plaintiff's credit reports, Experian readily sold false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

118. Experian published the same incorrect information multiple times.

119. Plaintiff was unable to obtain certain credit extensions, as described herein, because of the grossly inaccurate credit file maintained by Experian.

120. Plaintiff has suffered out-of-pocket loss as a result of Experian's willful or reckless and negligent violations of the FCRA.

121. Plaintiff has not been free to take advantage of various credit opportunities available to other consumers because of Equifax's failure to report only accurate information about the Plaintiff.

122. As a direct and proximate result of Experian's actions as alleged herein, the Plaintiff has suffered loss and damage as listed above as well as damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling the Plaintiff to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

123. Upon information and belief, Experian has been sued on multiple occasions over recent years for actions similar to the actions listed in this complaint.

124. Upon information and belief, Experian has exhibited a pattern of refusing to conform its practices the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

125. Experian's pattern of refusal to conduct its business in accordance with the FCRA reveals a conscious disregard of the rights of Plaintiff.

126. Experian's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of consumers.

127. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages against Experian, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

**VIOLATIONS OF N. C. Gen. Stat. § 75-50, *et seq.***

128. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

129. At all times relevant to the allegations in this complaint, GL collected an alleged debt that it claimed Mr. Montgomery owed.

130. GL knew that Mr. Montgomery did not owe the debt it attempted to collect because it was provided with information from which it could ascertain that Mr. Montgomery did not owe the debt.

131. GL made the false accusation to another person that Mr. Montgomery had not paid, or refused to pay, a just debt.

132. This behavior constitutes a specific violation of N. C. Gen. Stat. § 75-51(3).

133. GL caused Mr. Montgomery's telephone to ring or engaged the Plaintiff in telephonic conversation with such frequency as to be unreasonable under the circumstances.

134. This behavior constitutes a specific violation of N. C. Gen. Stat. § 75-52(2).

135. GL falsely represented the character, extent, or amount of a debt against the Plaintiff.

136. This behavior constitutes a specific violation of N. C. Gen. Stat. § 75-54(4).

137. GL attempted to collect improper fees.

138. This behavior constitutes a specific violation of N. C. Gen. Stat. § 75-54(6).

139. These acts caused damages as described herein.

140. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages of the actual damages plus civil penalties pursuant to N.C. Gen. Stat. § 75-56(b) as well as attorneys' fees and costs pursuant to N.C. Gen. Stat. § 75-16.1.

**DEMAND FOR JURY TRIAL**

141. Eleazar exercises his right to a trial by jury on all issues so triable.

**WHEREFORE,** the Plaintiff respectfully requests the following relief from the Court:

1. Compensatory damages in an amount to be determined at trial that will fairly and reasonably compensate the Plaintiff for the physical injury and pain, emotional distress, aggravation, annoyance, humiliation, and financial hardship suffered as a result of the Defendants' unlawful acts;

2. Punitive damages in an amount to be determined at trial for the willful, wanton and/or reckless disregard for the Plaintiff's legal rights;

3. Actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o;

4. Statutory damages, an assessment of punitive damages against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n;

5. Actual damages to be determined at trial and statutory damages of $4,000 per violation as allowed pursuant to N. C. Gen. Stat. §75-50, *et seq.*;

6. Costs and reasonable attorney's fees pursuant to N.C. Gen. Stat. §§ 75-16.1 and 75-50, *et seq.*; and,

7. For such other and further relief as this Court may deem just, equitable and proper.

**TODAY** is August 29, 2025.

                                              **WILLIAMS & PERRY**

By:   */s/ M. Shane Perry*
M. Shane Perry
NC Bar Number: 35498
109 W. Statesville Ave.
Mooresville, NC 28115
Telephone: 704-663-4187
shane@williamsperry.com
*Attorney for Plaintiff*