IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| Eleazar Montgomery,<br><br>     Plaintiff,<br><br> vs.<br><br>GoodLeap LLC; Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union, LLC,<br><br>     Defendants. | No. 1:25-cv-00296-MR-WCM |

## Defendant GoodLeap, LLC's Brief in Support of its Motion for Reconsideration

Defendant GoodLeap, LLC ("GoodLeap") moves the Court under Fed. R. Civ. P. 52(b), 54(b), and 59(e) to reconsider its Order denying GoodLeap's Motion to Compel Arbitration. (Order, March 23, 2026, ECF No. 30). Reconsideration is appropriate for three reasons. First, the Court denied GoodLeap's arbitration motion based on its determination that genuine issues of material fact existed as to whether an arbitration agreement was formed, (Order at 5), but the material fact identified by the Court was manufactured by Plaintiff's own conflicting testimony, so it should have been ignored. Second, if a genuine issue of material fact exists, the Court did not allow for the appropriate limited discovery or an

Case 1:25-cv-00296-MR-WCM Document 33 Filed 04/20/26 Page 1 of 17

evidentiary hearing on the issue of contract formation as required by the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), and binding precedent. These clear errors of law would result in manifest injustice to GoodLeap. Third, reconsideration is appropriate because the Court does not appear to have considered GoodLeap's ratification and other traditional third-party enforcement doctrines.

As is explained below, the Court should respectfully reconsider its prior Order and enter a new order compelling this action to arbitration. Failing that, the Court should reconsider its prior order and allow limited discovery on the issue of contract formation and entertain further briefing before an evidentiary hearing, if needed. Alternatively, the Court should reconsider its prior order and compel this case to arbitration against Plaintiff as a non-signatory based on other grounds that may have been overlooked in the prior order.

## Standard of Review

Motions under Fed. R. Civ. P. 54(b) and 59(e) have long been viewed as motions to reconsider prior rulings where the movant seeks to correct clear error, account for newly discovered evidence, or address an intervening change in controlling law. *See Carlson v. Boston Scientific*

*Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (discussing Rule 54(b) reconsideration standard); *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 407 (4th Cir. 2010) (discussing Rule 59(e)).

Rule 54(b) discusses litigation involving multiple claims and/or multiple parties, and allows an order that "adjudicates fewer than all the claims" and "does not end the action as to any of the claims or parties," so it "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Courts may reconsider and modify an interlocutory order at any time before the entry of a final judgment if the court finds there has been "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) (quoting *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988)); *see also id.* at 514 ("Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment.").

Rule 59(e) also "does not provide a standard under which a district court may grant a motion to alter or amend a judgment . . . ." *Pacific Ins.*

*Co. v. American Nat Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir. 1998). That said, the Fourth Circuit has recognized three "'grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" *Sloas v. CSX Transp. Inc.,* 616 F.3d 380, 386 (4th Cir. 2010) (quoting *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir. 1993)). "Thus, the rule permits a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Pacific Ins. Co.,* 148 F.3d at 403 (quotations and citations omitted).

Here, GoodLeap seeks to correct clear error or manifest injustice under the same standard regardless of whether the Court applies Rule 54(b) or Rule 59(e). And to the extent that the Court's Order can be understood as making any findings on the issue of contract formation, Fed. R. Civ. P. 52(b) authorizes the Court to "amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). "The motion may accompany a motion for a new trial under Rule 59." *Id.* GoodLeap alternatively moves under Fed. R. Civ. P. 52(b) on the same grounds set forth below.

**Argument**

**I.  The Court committed clear error by denying GoodLeap's arbitration motion despite there being no disputed material facts.**

Under the FAA, if the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order" compelling arbitration.  9 U.S.C. § 4.  But if "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."  *Id.*  Not "just any factual dispute will do."  *See Chorley Enters., Inc. v. Dickey's Barbecue Restaurants, Inc.,* 807 F.3d 553, 564 (4th Cir. 2015).  "In other words, to obtain a jury trial, the parties must show genuine issues of material fact regarding the existence of an agreement to arbitrate."  *Id.*

In denying GoodLeap's arbitration motion, the Court recognizes that GoodLeap offered a call recording in which Plaintiff admitted to signing the loan agreement.  (Order at 4.)  The Court explains, however, that Plaintiff "offered a sworn declaration to clarify his unsworn and seemingly inconsistent prior statement during that call."  (*Id.*)  The Court classified Plaintiff's declaration as one offered to "*clarify*, not to

Page 5 of 17

*contradict*, the meaning of the statements the Plaintiff made during the call." (*Id.* at 4 n.2.)

Respectfully, the Court has erred in crediting this self-serving declaration. *See In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011) ("[I]t is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct."). Plaintiff's declaration, signed years after his contemporaneous statements and with sufficient incentive for massaging that testimony to fit the needs of the case, should not be allowed to contradict admissible evidence GoodLeap has offered. *Id.* This is especially true because the context of the statements made in the call recording confirms that Plaintiff was discussing the execution of the Loan Agreement with Mr. Labrador, not some other documents as he claims in his post-hac explanation:

> Labrador: Okay. Right. Okay, alright, and and I understand that you mentioned that you're dyslexic, so you're unable to understand or comprehend a ***loan*** or ***solar contract***.
>
> Plaintiff: Yeah.
>
> Labrador: May I ask why you proceeded to sign these documents?
>
> Plaintiff: Well, she said it was supposed to help out the family. That's the reason why I was in a controlling environment. So if it was either yes, do it or not. So even though, I was of age, it was still like a controlling

> abusive environment, so I had to write it, so I wrote my name just as it is.

(Ex. 2 Labrador Decl. to Reply Br. at 3, ECF No. 26-2.) Mr. Labrador specifically mentions the "loan or solar contract" to which Plaintiff responds that "it" was to help out the family. (*Id.*) No mention is made about a deed—the only thing "it" can refer to is the contract at issue in this case. What's more, Plaintiff did not offer this recollection in response to GoodLeap's arbitration motion. That recollection was only provided to the Court in a sur-reply, even though GoodLeap provided sworn testimony about Plaintiff's testimony with its original motion. (*See* Ex. 4 Labrador Decl. to Br. Supp. Mot. at 3, ECF No. 21-4.) And that recollection also conflicts with Plaintiff's prior sworn testimony provided in his original response to the arbitration motion in which Plaintiff testified that "none of that statement is true," as it relates to Mr. Labrador's conversation with Plaintiff. (Pl.'s Decl. ¶ 21.) Plaintiff did not just testify that he did not remember his mother's "help the family" statement, or that he conceded he did act to "help the family" in other ways—he expressly stated that Mr. Labrador's testimony was not "true." (*Id.*) Having been confronted with the call recording, however, Plaintiff now remembers making the statement but tries to explain it away.

The Court should not allow Plaintiff to manipulate the applicable summary judgment standard under *Chorley* or *In re Family Dollar FLSA Litig.* by offering contradictory testimony, especially when that testimony conflicts with the call recording GoodLeap provides. Instead, it should reconsider its prior order and grant GoodLeap's arbitration motion.

**II.     The Court erred in refusing arbitration without allowing for limited discovery about the formation of an agreement to arbitrate or an evidentiary hearing.**

Where material facts about formation of an agreement to arbitrate are disputed, courts cannot decide a motion seeking to compel arbitration and must conduct a trial of this issue: "Section 4 of the FAA requires the court to conduct a trial of the issue if there are 'sufficient facts' support[ing] a party's denial of an agreement to arbitrate.'" *Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021) (internal citations omitted); *Hernandez v. OPW Fueling Components LLC*, No. 5:25-cv-203-FL, 2025 WL 2396501, at \*5 (E.D.N.C. Aug. 18, 2025) ("The court is obliged to conduct a trial only 'when a party unequivocally denies 'that an arbitration agreement exists,' and 'show[s] sufficient facts in support thereof,' under a summary judgment standard.") (internal citations omitted). "If the record reveals a genuine

dispute of material fact regarding the existence of an agreement to arbitrate, the court shall proceed summarily and conduct a trial on the motion to compel arbitration." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (quotations omitted).

In order to determine that such a factual issue is present and a trial is necessary, the Fourth Circuit has permitted some limited discovery to be completed. *Application of Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra*, 198 F.3d 473, 482 (4th Cir. 1999) ("Rule 81, therefore, would authorize a district court, in enforcing an arbitration agreement, to 'order discovery pursuant to Fed. R. Civ. P. 26 on matters relevant to the existence of an arbitration agreement.'") (quoting *Champ v. Siegel Trading Co.*, 55 F.3d 269, 276 (7th Cir. 1995)). Other circuits are in agreement that limited discovery is appropriate to resolve a factual dispute on the issue of contract formation, if one exists. *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 774 n.5 (3d Cir. 2013) ("In addition, it has commonly been allowed to determine whether an agreement to arbitrate has been formed."); *Deputy v. Lehman Bros.*, 345 F.3d 494, 511 (7th Cir. 2003) ("Additionally, Lehman Brothers must be given the opportunity to conduct limited discovery on the narrow issue

concerning the validity of Deputy's signature."). North Carolina's district courts have allowed limited discovery on the contract-formation issue where warranted. *Everett v. Accordius Health at Creekside Care, LLC*, No. 2:22-cv-39-D, 2023 WL 2816895, at *3 (E.D.N.C. Apr. 6, 2023) (denying motion to compel arbitration without prejudice "in order to allow the parties to conduct limited discovery on and for the court to resolve the" disputed issue where of material fact); *Dillon v. BMO Harris Bank, N.A.*, No. 1:13-cv-897, 2015 WL 6619972, at *3 (M.D.N.C. Oct. 30, 2015) (allowing limited pre-arbitration discovery); *Ross v. Fin. Recovery Servs., Inc.*, No. 1:21-cv-00206-MR-WCM, 2022 WL 4476755, at *4 (W.D.N.C. Sept. 26, 2022) (recounting limited discovery allowed to adduce the documents and facts needed to address the motion to compel arbitration); *cf.* Am. *Fed'n of State, Cnty. & Mun. Emps., Loc. 77 v. Duke Univ.*, No. 1:20-cv-180, 2021 WL 795830, at *8 (M.D.N.C. Mar. 2, 2021) (recognizing the authority to allow discovery, but declining to do so on the legal issue presented).

Here, the Court's conclusion that "genuine issues of material fact regarding the existence of an agreement to arbitrate" exist triggers the FAA's trial provision under the *Rowland* standard. Under the foregoing

authority, rather than outright denial of the motion to compel, the Court's determination that there are "genuine issues of material fact regarding the existence of an agreement to arbitrate" requires discovery and perhaps a trial. Consistent with *Chorley*, *Rowland*, and *Berkeley County Schools*, the Fourth Circuit has recently explained, albeit in an unpublished and non-binding opinion, that when there is "a genuine dispute of material fact regarding the existence of an agreement to arbitrate" a "district court errs in denying a motion to compel arbitration at this stage in the proceedings and should proceed to trial on the issue whether the parties agreed to arbitrate . . ." *James v. RPS Holdings, LLC*, No. 22-1027, 2024 WL 208147, at \*5 (4th Cir. Jan. 19, 2024) (per curiam) (cleaned up).

In order to get to the next step in the analysis under the applicable standard, GoodLeap does not suggest that free-wheeling discovery is appropriate. "Although a party may seek limited discovery to support or oppose a motion to compel arbitration, the discovery—like the trial— must be targeted to the disputed contract-formation questions." *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 175 (1st Cir. 2021) (quotations omitted); *Dillon v. BMO Harris Bank, N.A.*, No. 1:13-cv-897,

2015 WL 6619972, at *3 (M.D.N.C. Oct. 30, 2015) ("Only discovery tailored to matters pertinent to the disposition of the petition to compel arbitration and/or stay litigation may occur."). Accordingly, GoodLeap proposes the following limited discovery mechanisms as to whether an agreement to arbitrate exists for the Court's consideration:

1. A deposition of Plaintiff;

2. Subpoenas to depose Plaintiff's brother, Plaintiff's mother, the salesperson of the solar panel system, and applicable service providers involved in the execution of the Loan Agreement; and

3. Narrow requests for production between the parties.[1]

This proposed limited discovery would supplement the factual record and allow for more fulsome consideration of the issue of whether an agreement was formed. Following this limited discovery, should genuine issues of material fact remain, an evidentiary hearing would be warranted. *Rowland*, 993 F.3d at 258.

---

[1] Undersigned counsel conferred with Plaintiff's counsel about using limited discovery mechanisms, and Plaintiff did not consent to any limited discovery.

**III. The Court committed clear error by denying GoodLeap's arbitration motion without addressing its ratification or third-party enforcement arguments.**

Reconsideration is also appropriate because the Court's Order fails to address GoodLeap's other independent arguments that the arbitration agreement is enforceable even if Plaintiff did not sign the Loan Agreement. GoodLeap specifically argued that Plaintiff's conduct constitutes ratification of the agreement, and that arbitration is independently enforceable under direct benefits estoppel and agency. (Br. Supp. Mot. at 13, ECF No. 20; Reply Br. at 4, ECF No. 26.) These doctrines are not ancillary—they are recognized bases for enforcing arbitration agreements against non-signatories. *See LSB Fin. Servs., Inc. v. Harrison*, 144 N.C. App. 542, 547, 548 S.E.2d 574, 578 (2001) (explaining that "nonsignatories of arbitration agreements have been held to be bound by such agreements under ordinary common law contract and agency principles.") (quotation omitted); *see also Naimoli v. Pro-Football, Inc.*, 120 F.4th 380, 382 (4th Cir. 2024) (applying traditional state law principles to compel nonsignatories to arbitration).

The Court's Order does not address these arguments, nor does it explain why they do not apply. This omission is material. Even

assuming *arguendo* that Plaintiff had properly disputed contract formation, these doctrines provide independent grounds to compel arbitration.[2]  By failing to consider them, the Court applied an incomplete legal framework and reached a result that may have been different had all applicable doctrines been considered.  The Court should, therefore, reconsider its prior Order to apply these well-established doctrines to compel arbitration here.

## Conclusion

For the reasons set forth above, GoodLeap respectfully requests that the Court reconsider its Order.  The Court should either (1) grant GoodLeap's arbitration motion outright by refusing to allow Plaintiff to manufacture a genuine issue of material fact through contradictory testimony; (2) issue an order permitting limited discovery on the issue of contract-formation and hold an evidentiary hearing, if needed; or (3)

---

[2] As a result of the Court's order, GoodLeap is forced to litigate its claims against Plaintiff's mother in a separate forum.  If the fraud asserted by Plaintiff did in fact occur, GoodLeap itself is a victim of the fraud, and to protect its interests GoodLeap filed an arbitration against Plaintiff's mother.  (*See* **Exhibit 1**, Dawson 3d Decl. ¶¶ 4–5.)  This risks inconsistent results across the two interrelated proceedings.  *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000).

grant GoodLeap's motion on the grounds of ratification or the remaining

nonsignatory doctrines that were not addressed in the prior Order.

**Nelson Mullins Riley & Scarborough LLP**

By: */s/ Matthew A. Abee*
 Matthew A. Abee, N.C. Bar No. 46949
 E-Mail: matt.abee@nelsonmullins.com
 1320 Main Street / 17th Floor
 Post Office Box 11070 (29211-1070)
 Columbia, SC  29201
 (803) 799-2000

 Chelsea K. Barnes, N.C. Bar No. 53378
 E-Mail: chelsea.barnes@nelsonmullins.com
 380 Knollwood Street, Suite 530
 Winston-Salem, North Carolina 27103
 (336) 774-3397

April 20, 2026     *Attorneys for GoodLeap, LLC*

## Rule 7.1 Certification

Undersigned counsel hereby certifies, under L. Civ. R. 7.1(b) (W.D.N.C.), that GoodLeap has in good faith conferred with counsel for Plaintiff before filing this Motion. Plaintiff <u>opposes</u> the motion.

## Artificial Intelligence Certification

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

## Certificate of Service

I certify that on the date set forth below, I electronically filed the foregoing with the Clerk of Court and all counsel of record using the CM/ECF system.

**[Signature on following page.]**

**Nelson Mullins Riley & Scarborough LLP**

By: */s/Matthew A. Abee*
    Matthew A. Abee, N.C. Bar No. 46949
    E-Mail: matt.abee@nelsonmullins.com
    1320 Main Street / 17th Floor
    Post Office Box 11070 (29211-1070)
    Columbia, SC  29201
    (803) 799-2000

    Chelsea K. Barnes, N.C. Bar No. 53378
    E-Mail: chelsea.barnes@nelsonmullins.com
    380 Knollwood Street, Suite 530
    Winston-Salem, North Carolina 27103
    (336) 774-3397

April 20, 2026          *Attorneys for GoodLeap, LLC*