# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:25-cv-00296-MR-WCM

| | | |
|---|---|---|
| ELEAZAR MONTGOMERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| GOODLEAP, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendant GoodLeap, LLC's

Motion for Reconsideration [Doc. 32].

## I.     PROCEDURAL AND FACTUAL BACKGROUND

On August 29, 2025, the Plaintiff initiated this action against Defendant

GoodLeap, LLC,[1] alleging violations of the Fair Credit Reporting Act

("FCRA"), 15 U.S.C. § 1681 et seq., and the North Carolina Debt Collection

Act ("NCDCA"), N.C. Gen. Stat. § 75-50 et seq., based on a loan from

GoodLeap that was executed in the Plaintiff's name on June 13, 2020.  [Doc.

---

[1] The Plaintiff named three other defendants in his Complaint: Experian Information Solutions, Inc.; Equifax Information Services, LLC; and TransUnion, LLC.  [Doc. 1]. However, all three have settled the Plaintiff's claims against them, and the Plaintiff has filed dismissals with prejudice as to his claims against them. [Docs. 1, 16, 17, 19, 24, 25]. As a result, GoodLeap, LLC is the only Defendant remaining in this matter.

1].  The loan agreement contains an arbitration provision that requires "[a]ll claims and disputes arising out of or relating to th[e] Agreement . . . [to] be resolved by binding arbitration."  [Doc. 21-1 at 7].

In light of that agreement, the Defendant moved to compel arbitration in this case.  [Doc. 20].  The Plaintiff, however, challenged the formation of the loan agreement on grounds that he was illiterate and under the abusive control of his mother at the time the loan agreement was executed, that he never signed the loan agreement, and that he did not know that the loan agreement was executed in his name until 2024.  [Doc. 22-1 at ¶¶ 3-10, 14; Doc 28-2 at ¶¶ 3-5; Doc. 29-3 at ¶¶ 3-5]; see also [Doc. 1 at ¶¶ 31-56].  The Plaintiff further declared that he had never authorized anyone to act on his behalf regarding the loan agreement and that he had no access to the bank account from which payments were made on the loan for the four years between the execution of the loan and his discovery of the loan's existence. [Doc. 22-1 at ¶ 15-29; Doc. 29-3 at ¶ 11]; see also [Doc. 1 at ¶ 37].  In sum, the Plaintiff argued that he could not be compelled to arbitrate because he never agreed to the loan agreement or the arbitration provision in the first place.  [Docs. 22, 29].

The Court concluded that there were genuine issues of material fact regarding the existence of a valid agreement to arbitrate between the Plaintiff

and the Defendant and denied the Defendant's motion to compel arbitration. [Doc. 30 at 5]. On April 20, 2026, the Defendant timely filed a Motion for Reconsideration of the Court's Order pursuant to Rules 52(b), 54(b), and 59(e) of the Federal Rules of Civil Procedure. [Doc. 32]. The Plaintiff filed a Response in Opposition on May 7, 2026. [Doc. 36]. The Defendant has not filed a Reply, and the time period within which to do so has no expired. Accordingly, the Defendant's motion is now ripe for disposition.

## II.   STANDARD OF REVIEW

"Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment," and "a district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003).[2]  A Rule 54(b) motion seeks reconsideration and

---

[2] The Defendant has moved for reconsideration under Rules 52(b), 54(b), and 59(e) of the Federal Rules of Civil Procedure. [Doc. 32 at 1]. Rule 59(e) permits parties to move to alter or amend a judgment. Fed. R. Civ. P. 59(e). "Rule 59(e) is not, however, the appropriate vehicle for a motion for reconsideration," as the Fourth Circuit "has recognized a motion for review of an interlocutory order cannot be made under Rule 59(e)." Shrewsbury v. Cyprus Kanawha Corp., 183 F.R.D. 492, 493 (S.D.W. Va. 1998) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469–70 (4th Cir.1991)). Because a Rule 52(b) motion, like a Rule 59(e) motion, must be filed after entry of judgment and may accompany a Rule 59(e) motion, a Rule 52(b) motion is also not the appropriate vehicle for a motion for reconsideration. See Fed. R. Civ. P. 52(b). Accordingly, the appropriate standard of review for a motion for reconsideration of an interlocutory order like the one at issue here is the standard applicable under Rule 54(b). See Fayetteville Invs., 936 F.2d at 1470.

modification of an interlocutory order on grounds that "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." Akeva, L.L.C. v. Adidas Am., Inc., 385 F. Supp. 2d 559, 566 (M.D.N.C. 2005). "However, a motion to reconsider an interlocutory order should not be used to rehash arguments the court has already considered merely because the movant is displeased with the outcome." In Re: Aqueous Film-Forming Foams Prods. Liab. Litig., No. 2:18-MN-2873-RMG, 2025 WL 4072671, at *1 (D.S.C. Oct. 14, 2025).

## III.  DISCUSSION

The Defendant seeks reconsideration on three bases: (1) that there were no genuine disputes of material fact regarding the existence of a valid arbitration agreement between the Plaintiff and the Defendant; (2) that there were sufficient alternative grounds to compel arbitration even if the Plaintiff did not sign the loan agreement; and (3) that the Court should have provided for limited discovery and a trial on the issue of arbitrability.

### A.  Genuine Disputes of Material Fact Regarding the Agreement

First, the Defendant seeks reconsideration of the Court's conclusion that there are genuine disputes of material fact regarding the existence of a valid arbitration agreement between the Plaintiff and the Defendant.  For

4

grounds, the Defendant contends that the Court erred in crediting statements in the Plaintiff's sworn declaration that appeared to be inconsistent with prior unsworn statements the Plaintiff made during a telephone call with the Defendant. [Doc. 33 at 5-6]; see also [Doc. 30 at 4-5]. This contention, however, merely seeks to rehash arguments the Court has already considered, and it fails for the reasons the Court has already provided. See [Doc. 26 at 2-3]. The Court previously concluded that the Plaintiff's declaration clarified, but did not contradict, his prior unsworn statements, and the Court observed that "the Defendant has cited no authority for the proposition that the Court must defer to statements on a call recording that were not made under oath when those statements conflict with a sworn declaration." [Doc. 30 at 4 n.2]. The Defendant has again failed to cite any such authority.

Moreover, the Defendant continues to presume that, but for the contrary statements in the Plaintiff's declaration, the recording of the telephone call would unambiguously establish that the Plaintiff signed the loan agreement. [Doc. 21 at 11; Doc. 26 at 2; Doc. 33 at 5-7]. There is, however, no basis for that presumption. During the relevant call, the Plaintiff told the Defendant's employee that "he wasn't aware that [his mother] was getting a loan from GoodLeap" and that the email associated with the

5

electronic signature of his name on the loan agreement was his mother's email, not his. [Doc. 26-2 at 2-3]. The Plaintiff also stated that he "*wrote* [his] name just as it is," but the loan agreement was executed electronically via DocuSign, without writing. [Id. at 3 (emphasis added)]. The call recording alone supports a conclusion that there are genuine disputes of material fact regarding the existence of a valid agreement to arbitrate between the Plaintiff and the Defendant. Accordingly, the Court declines to reconsider its prior ruling as to this issue.

## B. Alternative Grounds to Compel Arbitration

Second, the Defendant contends that the Court erred by failing to fully address the Defendant's arguments that the Plaintiff ratified the loan agreement by his conduct and that the Plaintiff may be compelled to arbitrate under theories of equitable estoppel, direct benefits estoppel, and agency. [Doc. 33 at 13-14].

### 1. Ratification

The Defendant contends that the Plaintiff ratified the agreement by "allow[ing] the solar panel system to be installed on the Home where he was living and raising no issues about that installation," and by allowing "GoodLeap to automatically deduct monthly payments from his bank account." [Doc. 21 at 14]; see also [Doc. 26 at 4-7; Doc. 33 at 13-14].

However, as the Court noted in its prior Order, the Plaintiff stated in a sworn declaration that he was illiterate and under the abusive control of his mother at the time the loan agreement was executed, that he did not know the loan agreement was executed in his name until 2024, and that he had no access to the bank account from which payments were made on the loan. [Doc. 30 at 2]. The Defendant has offered no evidence to rebut the Plaintiff's statements of fact, and the Plaintiff could not, on those facts, be reasonably found to have ratified the loan agreement. For example, the Defendant's argument that the Plaintiff ratified the agreement because the "Plaintiff provided his bank account information to GoodLeap when he signed the Loan Agreement and authorized monthly payments by autopay" assumes the very conclusion that is the subject of dispute—namely that the *Plaintiff*, and not his mother, signed the agreement and authorized the payments. [Doc. 26 at 5]. Accordingly, the Court declines to reconsider its prior ruling as to this issue.

### 2. Equitable Estoppel

The Defendant further contends that the Plaintiff is bound to the loan agreement under a theory of equitable estoppel. [Doc. 33 at 13-14; Doc. 21 at 15-16]. The doctrine of "[e]quitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own

7

conduct renders assertion of those rights contrary to equity." <u>Carter v. TD</u> <u>Ameritrade Holding Corp.</u>, 218 N.C. App. 222, 230, 721 S.E.2d 256, 263 (2012) (quoting <u>Ellen v. A.C. Schultes of Md., Inc.</u>, 172 N.C. App. 317, 321, 615 S.E.2d 729, 732 (2005)). "In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." <u>Id.</u>

The Defendant contends that because the Plaintiff has sued the Defendant for improperly trying to collect a debt, and because there would be no debt to which the relevant debt collection statute could apply without the loan agreement, the Plaintiff is thereby estopped from asserting that the arbitration clause in the loan agreement cannot be enforced against him. [Doc. 21 at 16]. That argument, however, is so meritless that it encroaches upon the frivolous.

The specific statutory provision on which the Defendant relies defines "debt" as "any obligation owed or due *or alleged to be owed or due from a consumer*." N.C. Gen. Stat. § 75-50(2) (emphasis added). Therefore, to prosecute a claim against the Defendant under the debt collection statute, the Plaintiff needs to assert only that the Defendant *alleges the Plaintiff owes*

8

the Defendant a debt, not that the Plaintiff *in fact owes* the Defendant a debt. As a result, the Defendant's argument is unwarranted by the plain language of the law on which the Defendant relies. Moreover, on the Defendant's theory, a consumer who alleged that a debt collector inaccurately asserted that the consumer owed a debt pursuant to a contract and harassed the consumer to pay the nonexistent debt would always be estopped from raising an improper debt collection claim on grounds that the consumer was not bound by the contract. That theory would eviscerate the very protection the debt collection statute is intended to provide. Finally, equitable estoppel does not apply in these circumstances because the Plaintiff has never "maintained that other provisions of [loan agreement] should be enforced to benefit him." Carter, 218 N.C. App. at 230, 721 S.E.2d at 263. The Plaintiff has instead consistently maintained that he never entered a valid contract with the Defendant.

Accordingly, the Court concludes that the Defendant's equitable estoppel argument is, at best, meritless. The Court therefore declines to reconsider its prior ruling as to this issue.

### 3. Direct Benefits Estoppel

The Defendant further contends that the Plaintiff is bound to the loan agreement under a theory of direct benefits estoppel, which is a form of

equitable estoppel.  [Doc. 33 at 13-14; Doc. 21 at 15-16].  Specifically, the Defendant contends that because the Plaintiff "lived in the Home and benefitted from the solar panels," the Plaintiff directly benefitted from the loan agreement and is therefore estopped from asserting that he is not bound by it.  [Doc. 21 at 16; Doc. 26 at 7].  This argument, however, merely repackages the Defendant's ratification argument, which the Court has already found meritless, and rehashes an argument the Court has already considered and rejected.  Accordingly, the Court declines to reconsider its prior ruling as to this issue.

### 4.    Agency

The Defendant further contends that the arbitration agreement is enforceable under traditional agency principles because the Plaintiff's mother held herself out as the Plaintiff's agent and had apparent authority to sign the loan agreement on the Plaintiff's behalf.  [Doc. 33 at 13-14; Doc. 21 at 17-20; Doc. 26 at 7-8].  "The principle of apparent agency, as recognized by courts applying North Carolina law, provides that agency itself may be imposed by law . . . when a party "has been held out by the other to be [the agent] in a way that reasonably induces reliance on the appearances." Thomas v. Freeway Foods, Inc., 406 F. Supp. 2d 610, 618 (M.D.N.C. 2005) (quoting Crinkley v. Holiday Inns., Inc., 844 F.2d 156, 166 (4th Cir.1988))

(internal quotation marks omitted). "To establish liability based on apparent agency, a plaintiff must show that (1) the alleged principal has represented or permitted it to be represented that the party dealing directly with the plaintiff is its agent, and (2) the plaintiff, in reliance on such representations, has dealt with the supposed agent." Id. (quoting Crinkley, 844 F.2d at 166) (internal quotation marks omitted).

The Defendant contends that there are at least two reasons for the Court to find that the Plaintiff's mother was authorized to sign the agreement on his behalf. [Doc. 21 at 18]. First, the Defendant contends that it sent the Plaintiff a "Welcome Letter" with a "Loan Closing Certificate," and that the "Plaintiff never responded to the Welcome Letter nor contacted GoodLeap to inquire further regarding the Loan Agreement." [Doc. 21 at 18]. The Plaintiff, however, has stated in a sworn declaration that he was illiterate at the time and thus could not have read the letter, and that he never saw any such letter and was never informed that there was one. [Doc. 22-1 at ¶¶ 3, 26]; see also [Doc. 22 at 8-9]. Second, the Defendant contends that the Plaintiff made "over 37 payments under th[e] Loan Agreement from a bank account in his name." [Doc. 21 at 18]. As the Court has already addressed, however, the Plaintiff has stated in a sworn declaration that his mother had complete control of the bank account in his name at that time. [Doc. 22-1 at

11

¶¶ 22, 25].  As a result, both of the Defendant's arguments, which concern conduct *after* the loan agreement was executed, implicate genuine disputes of material fact.

The Defendant also contends that the Plaintiff "contacted" or "call[ed]" the Defendant in February of 2022 (twenty months after the date of the contract) and authorized his brother to speak on his behalf about the loan. [Doc. 21 at 18; Doc. 26 at 8-9].  That contention, however, is also genuinely disputed.  While the Defendant offers in a Declaration a picture of "notes" that suggest that "Eleazar Montgomery Auth Damian Cadalaine" seven minutes prior to the Plaintiff's brother's call to the Defendant, [Doc. 26-3 at ¶ 10], the Defendant nowhere explains how the Plaintiff's purported authorization was given.  Moreover, as the Court has previously addressed, the Plaintiff has stated in a sworn declaration that he "never authorized [his] brother to contact anyone for [him] or to act as [his] agent" and that the Plaintiff "never knew that [his brother] contacted GoodLeap or Loanpal as [his] representative."  [Doc. 22-1 at ¶ 27].   In sum, although the Defendant contends that the "Plaintiff acted all along as if his family was authorized to act on his behalf," the Defendant has failed to offer any undisputed facts tending to support that conclusion.  Accordingly, the Court declines to reconsider its prior ruling as to this issue.

### C. Trial on the Issue of Arbitrability

Finally, the Defendant contends that the Court erred in denying the Defendant's motion to compel arbitration without providing for limited discovery and a trial on the issue of arbitrability. [Doc. 33 at 8-12]. The Federal Arbitration Act ("FAA") provides that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. The Fourth Circuit has held that "[s]ection 4 of the FAA requires the court to conduct a trial of the issue if there are sufficient facts' support[ing] a party's denial of an agreement to arbitrate." Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC, 993 F.3d 253, 258 (4th Cir. 2021) (quoting Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 234 (4th Cir. 2019)). The Court is obligated to conduct a trial on the issue of arbitrability even if "no party requested a trial on the Arbitration Motion." Berkeley Cnty. Sch. Dist., 944 F.3d at 235.

Prior to the instant motion, the Defendant did not request limited discovery or trial on the issue of arbitrability and instead argued that the issue of arbitrability should be decided by an arbitrator, not the Court. [Doc. 21 at 20-22; Doc. 26 at 9-10]. Nevertheless, the Court concludes that because there are genuine disputes of material fact regarding the existence of an

13

agreement to arbitrate between the Plaintiff and the Defendant, the Court is obligated to provide for a trial on the issue of arbitrability.

Section Four of the FAA further provides that:

> If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, . . . on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.

9 U.S.C. § 4. Therefore, the Court must also determine whether the Plaintiff has demanded a jury trial "on or before the return day of the notice of application," which is construed as "the date set as responding" to a motion to compel. Berkeley Cnty. Sch. Dist., 944 F.3d at 242 n.16. Here, the Plaintiff demanded "a trial by jury on all issues so triable" in his Complaint. [Doc. 1 at ¶ 141]. Moreover, in his Response to the Defendant's motion to compel, the Plaintiff requested that the Court find that the existence of an arbitration agreement between the Plaintiff and the Defendant was a question of fact for the jury. [Doc. 22 at 12]. Therefore, the Court will provide for a jury trial on the issue of arbitrability unless the Plaintiff seeks to withdraw his jury demand and the Defendant consents to such withdrawal. See Fed. R. Civ. P. 38(d).

14

The Fourth Circuit has observed that "there is not a great deal of authority" regarding "the procedures that a district court should employ before conducting the trial" on the issue of arbitrability. <u>Berkeley Cnty. Sch. Dist.</u>, 944 F.3d at 242. As a result, the Fourth Circuit has declined to "delineate the pretrial procedures to which a court should adhere" and has "reserved [such procedures] to the able lawyers for the parties and the sound discretion of . . . the district court." <u>Id.</u>

Accordingly, the Court will direct the parties to conduct an Initial Attorney's Conference in accordance with the Local Rules for this district within fourteen days of entry of this Order. <u>See</u> LCvR 16.1(a). Within seven days of that conference, the parties must file a Certificate of Initial Attorney's Conference, which must include a proposed discovery plan regarding any limited discovery necessary to develop the factual record relevant to the issue of arbitrability. <u>See</u> LCvR 16.1(b). The Court will hold in abeyance its prior Order [Doc. 30] denying the Defendant's motion to compel arbitration pending further proceedings on the issue of arbitrability.

## IV. CONCLUSION

The Defendant's arguments for reconsideration of the substantive conclusions of the Court's prior Order are meritless attempts to rehash arguments that the Court has already considered and rejected. However,

the Defendant has properly identified a procedural error in the Court's denial of the Defendant's motion to compel without providing for trial on the issue of arbitrability. Accordingly, the Court will hold its prior Order in abeyance pending further proceedings on the issue of arbitrability and will direct the parties to conduct an Initial Attorney's Conference within fourteen days of entry of this Order.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendant GoodLeap, LLC's Motion for Reconsideration [Doc. 32] is hereby **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent that the Court will provide for a trial on the issue of arbitrability as discussed herein. The motion is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that the parties are hereby **DIRECTED** to conduct an Initial Attorney's Conference within **fourteen (14)** days of entry of this Order, and to file a Certificate of Initial Attorney's Conference, which must include a proposed discovery plan regarding any limited discovery necessary to develop the factual record relevant to the issue of arbitrability, within **seven (7)** days of the Initial Attorney's Conference.

**IT IS FURTHER ORDERED** that the Court's Order [Doc. 30] denying the Defendant's motion to compel arbitration is hereby **HELD IN ABEYANCE** pending further proceedings on the issue of arbitrability.

**IT IS SO ORDERED**.

Signed: June 2, 2026

Martin Reidinger
Chief United States District Judge